**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**WILLIAM D. STARKEY,**

      **Plaintiff,**

                                **Civil Action 2:20-cv-5213**
    **v.**                          **Judge Michael H. Watson**
                                  **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL
SECURITY,**

      **Defendant.**

**<u>REPORT AND RECOMMENDATION</u>**

Plaintiff, William D. Starkey, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for social security disability insurance benefits and supplemental security income. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 11), the Commissioner's Memorandum in Opposition (ECF No. 14), and the administrative record (ECF No. 10).  Plaintiff did not file a reply.  For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I.    BACKGROUND

Plaintiff protectively filed his applications for disability insurance benefits and for supplemental security income in October 2017, alleging that he has been disabled since May 4, 2015,[1] due to a torn disk in his back, nerve damage to his lower back and right leg.  (R. at 205-

---

[1] Plaintiff subsequently amended his alleged onset date of disability to May 15, 2016.  (R. at 41-42.)

212, 243.)  Plaintiff's applications were denied initially in November 2017 and upon

reconsideration in July 2018.  (R. at 79-112.)  Plaintiff sought a *de novo* hearing before an

administrative law judge.  (R. at 135-136.)  Administrative Law Judge Deborah M. Giesen

("ALJ") held a video hearing on October 28, 2019, at which Plaintiff, who was represented by

counsel, appeared and testified.  (R. at 36-78.)  A Vocational Expert ("VE") also appeared and

testified.  (*Id.*)  On December 3, 2019, the ALJ issued a decision finding that Plaintiff was not

disabled within the meaning of the Social Security Act.  (R. at 12-35.)  The Appeals Council

denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final

decision.  (R. at 1-6.)

## II.    HEARING TESTIMONY

The ALJ summarized Plaintiff's relevant hearing testimony as follows:

At the hearing, [Plaintiff] testified he initially stopped working secondary to back injury, for which he underwent surgery in 2018. He described experiencing a pain intensity level of "10" with nothing helping to ease the pain. He testified he attempted physical therapy treatment, but that therapy was causing his pain to worsen. [Plaintiff] also reported experiencing extensive numbness in the legs and feet, testifying that, prior to surgery, he would have numbness of such severity even after standing only 10 minutes. He testified that, despite undergoing surgery, he continues to use a cane for assistance; he continues to experience difficulty with sleeping; and continues to experience elevated pain that persists even despite steroid injection. Per his hearing testimony, he cannot stand longer than 15 minutes or walk more than ¼ mile. He also said he tries to lift very little and that he needs assistance with putting on socks. When questioned regarding his smoking and the effects of smoking on his lumbar impairment, [Plaintiff] acknowledged his continued smoking, testifying he has decreased this activity and is down to approximately 15 cigarettes per day.

(R. at 20.)

## III.    MEDICAL RECORDS

The ALJ summarized the relevant medical records as follows:

[Plaintiff's] complaints originate from a prior work injury related to the lower back. [Plaintiff] reports the initial injury occurred in April 2015, at which time he was

flipping heavy doors for installation and felt a pulling and burning sensation in his back. An EMG was done in the fall of 2015 that showed radiculopathy in the lower extremities. As of a January 27, 2016 pain specialist follow-up, he had not had any surgery. According to the examination report, a prior lumbar MRI did show some degenerative changes at L3-4 and L5-S1, along with some facet arthropathy. By the January 2016 follow-up, the report was that [Plaintiff] had also undergone a trial of physical therapy, along with epidural steroid injection. [Plaintiff] was taking Meloxicam, Lyrica, Norco, and Tizanidine. Noteworthy is [Plaintiff's] reports to the examiner that while his pain was exacerbated by bending, stooping, and sitting, it was alleviated with walking. Lumbar exam was positive for some tenderness with palpable pain elicited over the SI joints bilaterally, also accompanied by positive straight leg raising and pain on range of motion. However, lumbar vertebrae exhibited no evidence of subluxation, dislocation or laxity, or any other evidence of instability, and both sensory and motor exam were within normal limits.

As of March 16, 2016, [Plaintiff] was back to work following the initial injury, working part-time on light duty. According to reports, examiners were not convinced, based on [Plaintiff's] history and physical exam, that surgery would help him significantly. At this point, continued conservative treatment and medication management under the care of Dr. Mosely was recommended. By March 24, 2016, the report by [Plaintiff] was that chronic pain was stable; that he wished to continue with the current regimen; that his medication regimen offered improvement in function, activities of daily living, and quality of life; and that an increase in Lyrica did help his leg pain. [Plaintiff] continued to have some lumbar tenderness on exam, but demonstrated normal strength and tone with no muscle atrophy. Just the month prior, in a February 26, 201[6] letter from orthopedic surgeon, Michael D. Skeels, D.O., it was reported that [Plaintiff] did not wish to undergo surgery at that point.

Around the time of the amended alleged onset date of disability, a May 13, 2016 lumbar MRI showed some disc bulging present at L4/L5 and L5/SI, but was negative for disc herniations or spinal canal stenosis. Subsequent views of the lumbar spine in November 2017 showed mild degenerative changes. During the consultative internal medical examination conducted by Dr. Phillip Swedberg, M.D. in the same month, [Plaintiff] presented with a chief complaint of back pain with radiation down the buttock to the legs, and exacerbated by prolonged ambulation, standing, or weight-bearing. He also reported numbness in the legs with prolonged sitting. The examiner did note [Plaintiff] continued to drive, and that he was also continuing to smoke a pack of cigarettes daily. [Plaintiff] still had not had any surgical intervention. On exam, [Plaintiff] ambulated with a steady gait, without the use of ambulatory aids, and he presented as comfortable with both sitting and supine positions. While extension and lateral motion were said to have been somewhat diminished, there was no evidence of paravertebral muscle spasm, and percussion of the lumbar spinous process was not associated with tenderness. Further, straight leg raising was normal to 90 degrees bilaterally. On neurological examination, there was no evidence of muscle weakness or atrophy, and all sensory

modalities were well-preserved, including light touch and pinprick. Likewise, all deep tendon reflexes were brisk. The final impression was low back pain without radiculopathy, with the examiner noting that, while [Plaintiff] had some difficulty with forward bending, he ambulated with a steady gait and the remainder of the neuromuscular examination of both the upper and lower extremities was within normal limits. The consultative examiner added that there was no evidence of radiculopathy. Lumbar x-ray revealed mild to moderate facet hypertrophy.

Subsequent pain clinic evaluation notes, from November 30, 2017 through December 28, 2017, reference some continuing reports of lumbar discomfort, but with indications by [Plaintiff] that the medication regimen continues to offer improvement in function, activities of daily living, and quality of life. [Plaintiff] denied any neurological changes. He also denied any adverse side effects of medication. Additionally, on exam, straight leg raising test was negative and gait was normal. The examiner reviewed prior November 2017 lumbar x-ray describing the findings as mild degenerative changes. As of January 15, 2018, [Plaintiff] was reporting some continuing lumbar discomfort, but denied any muscle aches, muscle weakness, arthralgias/joint pain, or swelling in the extremities.

On consultation with Dr. Carolyn S. Neltner, on January 22, 2018, [Plaintiff] reported persistent lumbar discomfort but also admitted to continuing smoking, smoking one pack of cigarettes per day. Physical examination failed to reveal any significant abnormalities. Though [Plaintiff] ambulated with slow, cautious movements, gait, in general, was normal, with [Plaintiff] exhibiting normal heel/toe walk. Lower extremity examination was generally within normal limits, except for notation of some diffuse decreased pinprick sensation on the right and absent pathological reflexes bilaterally with positive straight leg raising; however, Dr. Neltner advised she did not identify pathology that she felt warranted neurosurgical intervention or that readily explained [Plaintiff's] bilateral lower extremity symptoms. Later EMG of the bilateral lower extremities, on February 5, 2018, showed absent nonspecific superficial peroneal sensory evoked responses, but otherwise normal motor and sensory conduction in the bilateral lower extremities. Dr. Neltner offered the same conclusions following repeat exam of [Plaintiff] on February 19, 2018—that "based on test results that I have been able to review to date, I have not identified specific pathology that warrants neurosurgical intervention".

In the interim, while pain clinic notes covering January 2, 201[8] through February 21, 2018, discuss reports of waxing and waning in [Plaintiff's] condition, they continue to note denial of neurological changes with [Plaintiff] also continuing to reiterate that the medication regimen offers improvement in function, activities of daily living and quality of life; there was no report of any new weakness/numbness. Straight leg raising tests were negative bilaterally and, while gait was described as antalgic, there were no indications for use or need for any assistive device. [Plaintiff] had lumbar discogram on April 11, 2018, with the results inconclusive, with respect to [Plaintiff's] control level.

4

At a second consultative internal medical examination on June 27, 2018, [Plaintiff] estimated he could only sit 20 minutes, stand 20 minutes and walk 30 minutes. On exam, [Plaintiff] ambulated with mildly antalgic gait, but was not unsteady and had no difficulty going from sitting to standing or getting on and off the examination table. [Plaintiff] did not require the use of a hand-held assistive device for ambulation. There was no evidence of paravertebral muscle spasm, straight leg raising was negative, and [Plaintiff] was able to stand on each leg, putting his hand on the table for balance; there was no hip joint tenderness, redness, warmth, swelling or crepitus. [Plaintiff] also remained neurologically intact with no evidence of atrophy noted. While lower extremity deep tendon reflexes were said to be abnormal, sensation was intact. [Plaintiff] was stable at station.

[Plaintiff] subsequently underwent lumbar fusion the following month, which did relieve a significant portion of his back pain. Views of the lumbar spine in August 2018 showed the surgical hardware to be intact without evidence of fracture or loosening, and confirmed normal alignment of the lumbar spine. It was during this same month that [Plaintiff's] doctor reported providing a prescription for a cane/walker, along with an order for physical therapy, to enhance his postoperative recovery. Radiographic imaging in September 2018 showed fixation fusion construction was intact; [Plaintiff] was healing well. The report by [Plaintiff] on January 4, 2019 was though his symptoms had not completed resolved, they had improved since surgery. Repeat lumbar x-ray revealed normal alignment of the spine, with the vertebral bodies maintaining normal height and the sacroiliac joints normal. The final impression was stable alignment of anterior fusion. As of the March 29, 2019 follow-up encounter visit, [Plaintiff] reported his preoperative back pain "drastically improved," and he denied any numbness, tingling or difficulty ambulating. During the same exam, muscle tone, bulk, reflexes and gait/posture were all normal. Lumbar x-ray continued to reveal normal alignment in the lumbar spine. While [Plaintiff] reported some accompanying hip discomfort during this visit, right hip x-ray confirmed preserved hip joint spaces. However, an MRI of the right hip was read as showing arthritic changes and edema over the bursa.

[Plaintiff] continued with some complaints related to the right hip during examinations in May through July 2019, but with gait and station remaining steady and normal; absent evidence for any related joint instability or muscle atrophy; with full 5/5 motor strength elicited; negative Stinchfield exam; intact sensation; negative impingement signs; and full range of motion. According to reports, repeat EMG study on July 12, 2019 revealed findings consistent with acute on chronic right L5-S1 radiculopathy and chronic L3 radiculopathy. However, at the pain management examination just the day prior, [Plaintiff] was noted to be in no acute distress and lumbar x-ray on August 2, 2019 was mild with no evidence for focal disc protrusion or extrusion. Later records on October 14, 2019 show [Plaintiff] was scheduled for additional lumbar surgery (SI joint fusion) for October 31, 2019. Musculoskeletal examination during the October 14, 2019 clinic visit was positive for some lumbar pain with decreased range of motion, but negative for any swelling, deformity or weakness. Additionally, the extremities were absent edema,

and [Plaintiff] presented as neurologically intact with normal strength, tone, and reflexes and with no tremor or rigidity noted. There were no reports that [Plaintiff] ambulated with the assistance of any hand-held device, or that one was required for ambulation.

(R. at 20-23 (internal citations omitted).)  The ALJ also weighed the medical source opinions of

record as follows:

The undersigned has considered the November 2017 opinion of the State Agency medical consultants at the initial level of the appeals process, who also found [Plaintiff] retains a maximum residual functional capacity for the performance of light exertional work activity, with some additional postural and environmental limitations, including no climbing of ladders, ropes or scaffolds, no more than frequently postural maneuvers, and with indications that [Plaintiff] should avoid work hazards. The undersigned finds this opinion persuasive, given its consistency and supportability in the record. However, the undersigned included the additional limitations as outlined above, given updated records received at the hearing level, and also giving [Plaintiff] the benefit of all reasonable doubt, as to his alleged impairment and its impact on his remaining functioning.

The undersigned finds the subsequent July 2018 opinion of the State Agency medical consultants at the reconsideration level of the appeals process somewhat persuasive for similar reasons. The State Agency found [Plaintiff] limited to lifting/carrying 20 pounds occasionally and 10 pounds frequently, with standing/walking limited to 4 hours; sitting limited to 6 hours; occasional operation of foot controls on the right; no climbing of ladders, ropes, and scaffolds; occasional climbing of ramps and stairs; frequent crawling, crouching, kneeling and stooping; and with indications that [Plaintiff] should avoid hazards. Again, the undersigned finds this opinion somewhat persuasive. There is support in the medical record for a light level of exertion and limitation on postural activities. However, the undersigned does not find the capacity for standing/walking for only 4 hours to be supported. As noted previously, exams have generally shown normal gait, with no neurological deficits despite the complaints of lower extremity pain. EMGs of the lower extremities have been consistent with some lumbar radiculopathy and imaging of the right hip have shown some degenerative changes. However, again, his gait has generally been found to be normal, and he is able to drive. Aside from the restrictions on standing/walking found by the State Agency consultants, the undersigned did include additional limitations as outlined in the above residual functional capacity, given updated records received at the hearing level, and also giving [Plaintiff] the benefit of all reasonable doubt, as to his alleged impairment and its impact on his remaining functioning.

The file contains multiple worker's compensation forms, outlining [Plaintiff's] return to work activity in early 2016, with indication for some restriction with respect to lifting, carrying, and the performance of postural maneuvers, along with

reports in February and March 2016 of a restriction to 4 hours of work per day. See Exhibits 1F, pages 39 and 50 for examples of these. These opinions, overall, are unpersuasive, as they are neither consistent with nor supported in the record. Nor are the opinions supported by specific citations to any examination or objective findings. While the undersigned has noted these forms, the Social Security Administration is not bound by any decisions or limitations offered from any other Agency, as to the finding of "disability," the degree of restriction of an impairment on functioning, or whether an individual can or cannot work.

The November 2017 opinion of the consultative internal medical examination finding [Plaintiff] "appears capable of performing a moderate amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting and carrying heavy objects," is unpersuasive. The opinion is vague and does not specify the degree of limitation in vocationally relevant terms. The subsequent June 2018 opinion of the consultative examiner following a second consultation in connection with [Plaintiff's] application for disability is unpersuasive for the same reasons. This examiner found [Plaintiff] "appears to be at least moderately impaired due to the objective findings described above." Noteworthy, these included [Plaintiff's] capacity to perform work-related activities such as bending, stooping, lifting, walking, crawling, squatting, carrying and traveling, etc[.]

(R. at 25-27 (internal citations omitted).)

## IV.    ADMINISTRATIVE DECISION

On December 3, 2019, the ALJ issued her decision.  (R. at 12-35.)  The ALJ found that

Plaintiff meets the insured status requirements of the Social Security Act through December 31,

2021.  (R. at 18.)  At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 404.1520(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.    Is the claimant engaged in substantial gainful activity?
2.    Does the claimant suffer from one or more severe impairments?
3.    Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.    Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.    Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available

has not engaged in substantially gainful activity since May 15, 2016, the amended alleged onset date.  (*Id.*)  The ALJ found that Plaintiff had the severe impairments of lumbar degenerative disc disease with radiculopathy status-post surgery, and degenerative joint disease of the right hip.  (*Id.*)  The ALJ further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 18-19.) Then, before proceeding to Step Four, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, [the ALJ] finds that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except, he can occasionally climb ramps and stairs, as well as occasionally balance, stoop, kneel, crouch, and crawl; cannot perform work around unprotected heights, open flames, or unprotected dangerous machinery; cannot climb ladders, ropes or scaffolds or operate foot controls/pedals on the right; and should be allowed an opportunity to change position between standing and sitting for up to 5 minutes every hour.

(R. at 19.)  At step four of the sequential process, the ALJ determined that Plaintiff is unable to perform any past relevant work.  (R. at 27.)  Relying on the VE's testimony, the ALJ concluded that Plaintiff can perform other jobs that exist in significant numbers in the national economy.  (R. at 28-29.)   She therefore concluded that Plaintiff was not disabled under the Social Security Act at any time since May 15, 2016, the amended alleged onset date.  (R. at 29.)

## V.   STANDARD OF REVIEW

 When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

---

in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a [Plaintiff] on the merits or deprives [Plaintiff] of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.   ANALYSIS

Plaintiff sets forth two contentions of error:  (1) the ALJ failed to adequately explain her finding at Step Three that Plaintiff did not meet or equal the criteria of Listing 1.04A; and (2) the ALJ erred in not accepting evidence from Dr. Immesoete. (ECF No. 11 at PAGEID ## 946-954). Specifically, Plaintiff argues that he "put forth sufficient evidence to demonstrate that his

impairments meet and/or equal Listing 1.04A," including "evidence of nerve root compression characterized by neuro-anatomic distribution of pain and limitation of motion of the spine" and "documentation of an inability to perform fine and gross movements effectively and/or ambulate effectively because of the impact of the medical condition." (*Id.* at PAGEID ## 946-951.) Plaintiff also argues that the ALJ improperly refused to consider evidence from Plaintiff's treating neurologic surgeon, Dr. Philip Immesoete, which was requested in a timely manner but was not received until the day of Plaintiff's administrative hearing. (*Id.* at PAGEID ## 951-954.)

In response, the Commissioner argues that "[w]hile the record showed that Plaintiff had a severe lumbar spine impairment, there is no evidence in the record suggesting that Plaintiff's lumbar spine issues caused compromise of a nerve root" and Plaintiff does not meet either Section A or Section C of Listing 1.04A. (ECF No. 14 at PAGEID ## 968-972.) The Commissioner also argues that the ALJ properly rejected the untimely evidence from Dr. Immesoete, as "no proper justification was offered for its tardiness." (*Id.* at PAGEID # 972.) The Commissioner also stresses that any error in this regard was harmless, as the evidence "would not have advanced [Plaintiff's] effort to obtain benefits at all." (*Id.*) Plaintiff did not file a Reply brief, so the briefing is ripe for judicial review. The Court will address each of Plaintiff's arguments in turn.

**1.    The ALJ Properly Found that Plaintiff Did Not Meet the Criteria of Listing 1.04.**

The first issue before the Court is whether the ALJ erred in assessing that Plaintiff does not meet Listing 1.04. (*See* ECF No. 11 at PAGEID ## 946-951.) To satisfy Listing 1.04, Plaintiff must have an impairment as follows:

> 1.04   *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A.      Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or

B.      Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

C.      Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.

Plaintiff has the burden of proving that he meets or equals all of the criteria of a listed impairment.  *Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir. 2012) ("Plaintiff had the burden of showing that his impairments were equal or equivalent to a listed impairment.") (citing *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).  A decision that a claimant meets a listed impairment "must be based solely on medical evidence supported by acceptable clinical and diagnostic techniques."  *Land v. Sec'y of H.H.S.*, 814 F.2d 241, 245 (6th Cir. 1986).  In determining whether a claimant satisfies the requirements of a listing, the ALJ must "actually evaluate the evidence, compare it to Section [1.04] of the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review.  Without it, it is impossible to say that the ALJ's decision . . . was supported by substantial evidence."  *Reynolds v. Comm'r of Soc. Sec.,* 424 F. App'x 411, 415–16 (6th Cir. 2011) (citations omitted).  Additionally, the record evidence must show that Plaintiff's impairment "has lasted or can be expected to last for a continuous period of 12 months."  20 C.F.R. § 404.1525(c)(4).

Here, the ALJ found that Plaintiff does not meet Listing 1.04 for the following reasons:

The record fails to demonstrate a nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss and positive straight leg raising (1.04A). Furthermore, the record evidence fails to establish spinal arachnoiditis (1.04B) or lumbar spinal stenosis with pseudoclaudication (1.04C). As required by listing 1.02, the record fails to document major dysfunction of a joint(s) (due to any cause) and characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s) and with involvement of one major peripheral weight-bearing joint (*i.e.*, hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b. Thus, no listing is met. The undersigned also notes the record does not document findings equivalent in severity to any listed impairment, and no medical professional designated by the Commissioner has opined [Plaintiff] has an impairment or combination of impairments that equals a listing. Consequently, [Plaintiff] does not have an impairment or combination of impairments that meets or equals a listing.

(R. at 19.)  Plaintiff takes issue with the ALJ's findings for multiple reasons.  First, Plaintiff cites

numerous medical records which Plaintiff argues "satisfy the first prong of Listing 1.04 by

showing evidence of nerve root compression characterized by neuro-anatomic distribution of

pain and limitation of motion of the spine."  (ECF No. 11 at PAGEID ## 947-948 (citing R. at

312, 315, 319-210, 322, 327, 337, 341, 347, 364, 368, 374, 376, 382, 388, 390-391, 393-396,

405, 413-416, 462, 469, 536, 542, 544, 547, 550, 565, 587, 594, 599, 618, 624, 667, 672, 677,

680, 686, 700, 722-723, 753, 757, 760, 767, 800-805, 818, 873, 877).)[3]  Plaintiff then argues

---

[3] On October 5, 2020, the Court ordered that "[a]ll briefing must include references to the administrative record in the following citation format to the **Bates-stamped number in the lower-right hand corner of the page**: '(R. at ____.)'."  (ECF No. 3 at PAGEID # 9 (emphasis added).)  While Plaintiff's Statement of Errors appears at first glance to cite to the administrative record in this manner, a closer examination reveals that Plaintiff's counsel cited to the (federal court) PageID numbers which are indicated in the upper-right hand corner of each page, instead of citing to the (administrative record) page numbers which are indicated in the lower-right hand corner, in violation of the Court's prior Order and Local Rule 8.1(d).  *See* S.D. Ohio Civ. R. 8.1(d) ("When citing to the administrative record in Social Security cases, parties must provide pinpoint citations **to the administrative record, regardless of whether a party also chooses to provide PageID citations**.") (emphasis added).  Plaintiff's counsel's failure to comply with the Court's Order and with Local Rule 8.1(d) created inconsistencies with the Commissioner's

"[t]here is also evidence of the second requirement of Listing 1.04A, which is documentation of an inability to perform fine and gross movements effectively and/or ambulate effectively because of the impact of the medical condition." (*Id.* at PAGEID ## 948-949 (citing R. at 66-68, 338, 347, 647).) Finally, Plaintiff argues that the ALJ's "brief and conclusory analysis does not rise to the level required by the regulations and fails to build an accurate and logical bridge between the evidence and his conclusion." (*Id.* at PAGEID ## 950-951.)

The Commissioner rejects each of these positions. First, the Commissioner states "[t]here is no evidence in the record of nerve root compression" and "[t]here is no medically acceptable imaging suggesting that Plaintiff's lumbar spine stenosis resulted in pseudoclaudication," so "[t]he evidence conclusively shows that Plaintiff did not meet the requirements of listing 1.04." (ECF No. 14 at PAGEID ## 968-969.) The Commissioner also notes that "the only medical sources in the record to consider whether Plaintiff met or medically equaled a listing . . . explicitly considered listing 1.04 and found that Plaintiff did not meet the requirements of the listing," and argues that "these findings constitute substantial evidence to support the ALJ's step three findings." (*Id.* at PAGEID # 969.) Finally, the Commissioner argues that reading the ALJ's decision in its entirety confirms that "the brevity of the ALJ's analysis at step three was not error." (*Id.* at PAGEID # 970.)

The Commissioner's arguments are well taken. First, after reviewing the record evidence cited by Plaintiff, the Undersigned agrees with the Commissioner that there is no evidence in the record of nerve root compression, a required element of Listing 1.04A. *Bailey v. Commissioner of Social Sec.,* 413 Fed. Appx. 853, 854 (6th Cir. 2011) ("[T]o establish a disorder of the spine,

---

briefing and overcomplicated the Court's review of these issues. Counsel is **ADVISED** that as an attorney admitted to practice before this Court, she is required to be familiar with the local rules and to follow them to avoid unnecessarily burdening the Court in the future.

Bailey must show either nerve-root or spinal-cord compression."); *Brauninger v. Comm'r of Soc. Sec.*, No. 1:16-CV-926, 2017 WL 5020137, at *4 (S.D. Ohio Nov. 3, 2017), *report and recommendation adopted*, No. 1:16-CV-926, 2018 WL 1420573 (S.D. Ohio Mar. 22, 2018), *aff'd*, No. 18-3495, 2019 WL 2246791 (6th Cir. Feb. 25, 2019) ("[T]o satisfy Listing 1.04A, a claimant must prove nerve root compression.").  "While there is some variation in the case law concerning the quantity of proof of actual 'compression' that is required to satisfy Listing 1.04A, many courts require fairly explicit evidence."  *Brauninger*, 2017 WL 5020137, at *4 (collecting cases); *see also Stewart v. Comm'r of Soc. Sec.*, No. 2:17-CV-706, 2018 WL 1443686, at *9 (S.D. Ohio Mar. 23, 2018), *report and recommendation adopted*, No. 2:17-CV-706, 2018 WL 1980254 (S.D. Ohio Apr. 27, 2018) (citing *Brauninger*).

Here, Plaintiff identifies record evidence that reveals "L4-5 disc protrusion, broad based; facet arthropathy; mild biforaminal narrowing, left greater with abutment of the left L4 nerve root; left far lateral annular tear noted; L5-S1 protruding disc more prominent rightward abutting the descending right S1 nerve root; facet arthropathy with mild to moderate right foraminal narrowing with abutment of the right L5 nerve root," as well as "L5-S1 neuropathic radiculopathy on the right side with mild popliteal compression palsy."  Yet, Plaintiff conspicuously fails to point to ***any*** evidence of nerve root compression.  (*See* ECF No. 11 at PAGEID # 947-948.)  This ends the inquiry as to Listing 1.04A.  *See Smith-Johnson v. Comm'r of Soc. Sec.,* 579 F. App'x 426, 432–33 (6th Cir. 2014) ("[T]he claimant must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing.") (citing *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885 (1990)).

For the same reason, the Undersigned finds that Plaintiff does not meet Listing 1.04C, to the extent Plaintiff argues he had an "inability to ambulate effectively."  (ECF No. 11 at

14

PAGEID # 948 ("There is also evidence of the second requirement of Listing 1.04A, which is documentation of an inability to perform fine and gross movements effectively and/or ambulate effectively because of the impact of the medical condition.").) Listing 1.04C, unlike Listing 1.04A, requires an inability to ambulate effectively.[4] But, Plaintiff fails to point to any specific evidence demonstrating pseudoclaudication, the primary requirement of the listing. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. Accordingly, even assuming, *arguendo*, that Plaintiff has demonstrated an inability to ambulate effectively, Plaintiff has failed to identify any specific evidence that demonstrates that he reasonably could meet or equal every requirement of Listing 1.04A or 1.04C.

Finally, the Undersigned agrees with the Commissioner that "the brevity of the ALJ's analysis at step three was not error." (ECF No. 14 at PAGEID # 970.) The ALJ quickly, but sufficiently, dismissed Listings 1.04A, 1.04B, and 1.04C by correctly concluding that the record did not support any of the Listings' primary requirements. (R. at 19.) The ALJ also correctly cited other substantial evidence by noting that "no medical professional designated by the Commissioner has opined [Plaintiff] has an impairment or combination of impairments that equals a listing." (*Id.*) The ALJ did not need to go any further. *Norris v. Comm'r of Soc. Sec.*,

---

[4] The regulations define a claimant's ability to "ambulate effectively" as follows:

> Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

20 CFR § Pt. 404, Subpt. P, App. 1 § 1.00B(2)(b)(1). The regulations further provide various examples of effective ambulation. *See* 20 CFR § Pt. 404, Subpt. P, App. 1 § 1.00B(2)(b)(2) (emphasis added).

No. 1:18-CV-693, 2020 WL 1080414, at *4 (S.D. Ohio Mar. 6, 2020), *report and recommendation adopted*, No. 1:18CV693, 2020 WL 1434462 (S.D. Ohio Mar. 24, 2020) ("Courts have been reluctant to impose a strict articulation standard on ALJs at step three.") (citing *Price v. Heckler*, 767 F.2d 281, 284 (6th Cir. 1985) (minimal articulation required at step three)).  Accordingly, Plaintiff's first assignment of error is not well taken.

## 2.     The ALJ Properly Excluded Untimely Evidence.

For his second assignment of error, Plaintiff argues that the ALJ erred in not accepting evidence which Plaintiff produced at his administrative hearing.  (ECF No. 11 at PAGEID ## 951-954.)  Specifically, Plaintiff points to an opinion from Dr. Phillip Immesoete, Plaintiff's treating neurologic surgeon, which Plaintiff's counsel submitted to the ALJ for consideration during the October 28, 2019 hearing.  (*Id.*)  Plaintiff argues that because the evidence was requested timely and was not known to Plaintiff's counsel before the hearing, the ALJ had a duty to consider the evidence.  (*Id.*)  In response, the Commissioner argues that because "[t]he evidence was untimely, and no proper justification was offered for its tardiness," the ALJ properly excluded it.  (ECF No. 14 at PAGEID ## 972-973.)  The Commissioner also argues that the issue is ultimately irrelevant, because "the evidence [Plaintiff] sought to rely on was per se meaningless under the regulations, and would not have advanced his effort to obtain benefits at all."  (*Id.*)

The Court agrees with the Commissioner.  The relevant Social Security regulation is 20 C.F.R. § 404.935, which reads as follows:

(a)  When you submit your request for hearing, you should also submit information or evidence as required by § 404.1512 or any summary of the evidence to the administrative law judge. **Each party must make every effort to ensure that the administrative law judge receives all of the evidence and must inform us about or submit any written evidence, as required in § 404.1512, no later than 5 business days before the date of the scheduled hearing. If you do not comply**

**with this requirement, the administrative law judge may decline to consider or obtain the evidence, unless the circumstances described in paragraph (b) of this section apply.**

(b) If you have evidence required under § 404.1512 but you have missed the deadline described in paragraph (a) of this section, the administrative law judge will accept the evidence if he or she has not yet issued a decision and you did not inform us about or submit the evidence before the deadline because:

(1) Our action misled you;

(2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from informing us about or submitting the evidence earlier; or

(3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier. Examples include, but are not limited to:

> (i) You were seriously ill, and your illness prevented you from contacting us in person, in writing, or through a friend, relative, or other person;

> (ii) There was a death or serious illness in your immediate family;

> (iii) Important records were destroyed or damaged by fire or other accidental cause; or

> (iv) You actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing.

20 C.F.R. § 404.935 (emphasis added). Here, there is no dispute that Plaintiff disclosed the evidence at issue during the October 28, 2019 hearing. Accordingly, the burden falls to Plaintiff to demonstrate that one of the circumstances of 20 C.F.R. § 404.935(b) applies. *Id.* Plaintiff's counsel and the ALJ discussed this very issue during the October 28, 2019 hearing, and Plaintiff's counsel admitted during the hearing that no such circumstances were present:

> ATTY: Yes, Your Honor. [Plaintiff] indicated that his doctors have provided notes or letters outlining their support of his disability application. They weren't included in the records the doctors submitted, unfortunately, so he brought them with him today. I'm happy to submit those after the hearing. They're from –

> ALJ: Well –

ATTY:  – Dr. Witt and Dr. Immasote.

\*\*\*

ALJ:    Okay. As you know, I am to be notified – either provided with outstanding documentation or notified of it at least five days in advance of the hearing. Now, [Plaintiff] received the same notice that you did, with the same notification that I'm supposed to be informed at least five business days before the hearing of outstanding documentation.

That of course includes opinions or, or narratives from doctors who maybe are – who are providing some type of information about the claim. Includes treatment records, it includes opinions, includes RFC forms, and, and those kind of things. **Is there a basis here under the regulation that you can point me to that would, would support me admitting this documentation, under the regulation?**

ATTY: Your Honor, so at the very least, Dr. Immasoete just provided an updated opinion, faxed it to us today, and I submitted it via ERE, because I had electronic access to that. So because it was only provided today, I would ask that that be submitted. Again, these, [Plaintiff] just provided to me today. I had thought that maybe they were contained in the record and I just missed them. But they were not. So just on this, on that basis –

ALJ:    **Well, again, is there a basis here?** Are you saying that you were misled, that [Plaintiff] or you did not understand the requirements of the regulation, that – you're saying that something that was provided – again, we're giving notice here two and a half, three, sometimes four months in advance of a hearing, which gives plenty of notice for someone to provide something or, or obtain a, an opinion from a doctor, treating, examining or otherwise. I'm not hearing that here. Bringing something in the day of the hearing – unless there's some drastic change here in [Plaintiff]'s condition?

ATTY: **There's no drastic change, Your Honor.** He's, he's scheduled for surgery October 31st, but other than that, the, the letters don't speak to that. They just speak to their support of his disability application.

ALJ:    Well, are they providing an opinion that gives some limitations related to their examination or their review of some kind of records? Are they simply saying they, they agree he's disabled? Because obviously, you know that's not a medical opinion under the regulations, and it's my territory.

ATTY: Correct, Your Honor. Dr. Witt indicates that [Plaintiff]'s –

ALJ:    All right, I'm not asking you to read it to me. Just, I mean, is it – is it – does it give function-by-function?

ATTY: It does not, no.

> ALJ:    Okay. Well, given the fact that I have no notice of this, that it doesn't appear that they – it gives function-by-function, you've had plenty of notice in advance of the hearing, I am not going to admit that documentation. And if you submitted something similar to the record today or yesterday, obviously best evidence practice states I'm not going to – not going to admit that, as well.  Okay.

(R. at 39-41 (emphasis added).)

The opportunity to brief the issue has not helped Plaintiff's case, as Plaintiff now affirmatively concedes that the records in question "were timely requested from Dr. Immesoete and received on October 13, 2019," more than two weeks before the October 28, 2019 hearing. (ECF No. 11 at PAGEID # 954.)  Plaintiff argues that counsel "did not have knowledge of the medical opinion . . . and it was not received from the physician until the day of the hearing." Under these circumstances, Plaintiff has failed to meet his burden under of 20 C.F.R. § 404.935(b).  Not only does this argument contradict counsel's statement during the October 28, 2019 hearing that she "had thought that maybe they were contained in the record and [she] just missed them," but Plaintiff also has completely failed to demonstrate how this rises to the high bar of an "unusual, unexpected, or unavoidable circumstance beyond [his] control," as required by 20 C.F.R. § 404.935(b)(3).  To the contrary, the Undersigned finds that it was entirely within Plaintiff and his counsel's control to know what records were (and were not) received on October 13, 2019.  Had Plaintiff and his counsel been diligent at that time, then they could have timely requested supplementation so that they could forward the subject opinion to the ALJ well before five days before Plaintiff's hearing.  In the absence of any proper justification under 20 C.F.R. 404.935(b), the Court cannot find error with the ALJ's decision to exclude such evidence.

That said, even assuming, *arguendo*, that the ALJ erred, the Undersigned finds that any error would have been harmless.  Plaintiff submits that the opinion at issue states in relevant part that "[i]t is [Dr. Immesoete's] medical opinion that [Plaintiff] is unable to work at this time due

19

to significant SI joint dysfunction." (ECF No. 11 at PAGEID # 953.) This is consistent with counsel's representation during the October 28, 2019 hearing that Dr. Immesoete simply agreed that Plaintiff is disabled. (R. at 40-41.) As the ALJ correctly pointed out during the hearing, however, that is not a medical opinion, and is inherently neither valuable nor persuasive evidence, as it goes to an issue reserved for the Commissioner. *See Dawkins v. Comm'r of Soc. Sec.*, No. 2:20-CV-5000, 2021 WL 3029681, at *9 (S.D. Ohio July 19, 2021), *report and recommendation adopted*, No. 2:20-CV-5000, 2021 WL 4033206 (S.D. Ohio Sept. 3, 2021) ("The letter's conclusory statement that 'it may be beneficial for the consumer to be excused from working at this time' constitutes a statement that intrudes 'on issues reserved to the Commissioner' and is 'inherently neither valuable nor persuasive' under the regulations.") (citing 20 C.F.R. § 404.1520b(c)(3)(i) (explaining that "[s]tatements that you are or are not . . . able to work, or able to perform regular or continuing work" are inherently neither valuable nor persuasive)). Accordingly, Plaintiff's second assignment of error is not well taken.

## VII.    CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits, and that the ALJ's decision was made pursuant to proper legal standards. Based on the foregoing, it is therefore **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED.**

## VIII.    PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report an\d Recommendation, specifically designating this Report and Recommendation, and the part in

question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

Response to objections must be filed within fourteen (14) days after being served with a copy.

Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and

Recommendation will result in a waiver of the right to *de novo* review by the District Judge and

waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex*

*Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate

judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district

court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that

defendant waived appeal of district court's denial of pretrial motion by failing to timely object to

magistrate judge's report and recommendation).  Even when timely objections are filed, appellate

review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994

(6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the

issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).


Date:     December 20, 2021                             /s/ *Elizabeth A. Preston Deavers*
                                                      Elizabeth A. Preston Deavers
                                                      United States Magistrate Judge